910 N.E.2d 837 (2009)
In the Matter of D.S., A Minor Alleged To be a Delinquent Child.
Indiana Department of Child Services, Appellant-Petitioner,
v.
D.S., a Minor Child, and
Madison County Superior Court, Appellees-Respondents.
No. 48A02-0905-JV-428.
Court of Appeals of Indiana.
August 10, 2009.
*838 Robert J. Henke, Indiana Dept. of Child Services, Indianapolis, IN, Attorney for Appellant.
Steven C. Smith, Smith Carrillo Reeder, Anderson, IN, Attorney for D.S., Minor Child.
Hon. G. George Pancol, Anderson, IN, Attorney for Madison Cty. Sup. Crt.[1]

OPINION
MAY, Judge.
The Indiana Department of Child Services ("IDCS") seeks expedited review, pursuant to Indiana Appellate Rule 14.1, of the Madison Superior Court's modified dispositional order placing D.S., a juvenile adjudicated to be a delinquent, in an out-of-state shelter care facility contrary to the IDCS's placement recommendation. We affirm.

*839 FACTS AND PROCEDURAL HISTORY
On January 11, 2009, fifteen-year-old D.S. was arrested for battery, pointing a firearm, and several other charges. This incident was not D.S.'s first encounter with Indiana's juvenile justice system. D.S.'s extensive history as a delinquent includes alcohol and drug abuse, expulsion from Anderson High School after having completed only the ninth grade, and significant involvement with a local gang and other "negative peer associations." (Appellant's App. at 7.)
On his arrest for the underlying charges, D.S. was placed in a secure detention facility where he remained until the final dispositional hearing. This detention followed several less restrictive dispositions where the trial court imposed various forms and degrees of supervision and placements in community programs due to D.S.'s prior delinquent behavior. The formal charges against D.S. in the present case were eventually resolved by plea agreement. D.S. admitted to the battery and pointing of a firearm charges and the remaining three charges were dismissed. It was later unanimously determined by the Serious Habitual Offender Program Board that D.S. should be designated a Serious Habitual Offender based on his criminal history of handgun possession and involvement with gang activity.
The Madison County Probation Department initially recommended D.S. be committed to the Department of Correction or placed in the Rite of Passage Program at Canyon State Academy in Queens Creek, Arizona. Rite of Passage is a residential treatment facility that specializes in the rehabilitation of offenders with gang affiliations and substance abuse issues. Rite of Passage has a program that allows its student athletes to participate in high school sports and to qualify for post-secondary athletic scholarships.
D.S. initially indicated he did not wish to participate in the Rite of Passage program; however, after further consideration, D.S., the Probation Department, the State, and D.S.'s mother all agreed D.S. would benefit more from a residential placement at Rite of Passage than from placement at the Department of Correction. This information was presented to the trial court and a dispositional hearing was set for May 8, 2009.
On May 5, 2009, the Probation Department submitted a pre-dispositional report to the trial court and IDCS. Following the May 8 dispositional hearing, the court placed D.S. in the Rite of Passage program. An IDCS consultant did not appear at the hearing and had not responded to the Probation Department's pre-dispositional report by the time of the hearing. However, on May 11, 2009, IDCS indicated to the court that it did not agree with the Probation Department's placement recommendation. It instead recommended that D.S. be placed in one of several residential programs located throughout Indiana. The court rescinded its May 8 dispositional order and reset the matter for hearing on May 19, 2009.
After the May 19 hearing, the court again placed D.S. in the Rite of Passage residential program. IDCS timely filed a Notice of Expedited Appeal, pursuant to Indiana Appellate Rule 14.1.

DISCUSSION AND DECISION
Indiana Appellate Rule 14.1 provides IDCS with an avenue for seeking expedited interlocutory review of a dispositional order in delinquency and child in need of services ("CHINS") cases where the court's order for services or out-of-home placement is made in contravention of IDCS's recommendations to the court. *840 Appellate Rule 14.1 limits expedited review to appeals taken pursuant to Indiana Code §§ 31-34-4-7(f) and 31-34-19-6.1 (CHINS cases) and Indiana Code §§ 31-37-5-8(g) and 31-37-18-9(d) (delinquency cases).
Our Supreme Court recently addressed the appropriate standard of review to be applied in Rule 14.1 Expedited Appeals:
[O]nce the juvenile court has appropriately considered the [IDCS] recommendations in light of the relevant evidence and reached a contrary conclusion, the appellate function is governed by Indiana Trial Rule 52, which states that "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."
In re T.S., 906 N.E.2d 801, 804 (Ind.2009). Thus, our review is two-tiered; we consider first whether the evidence supports the findings, and second, whether the findings support the judgment. Id.; see also Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind.2005) (applying this standard to the termination of parental rights).
A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. In re D.D., 804 N.E.2d 258, 265 (Ind.Ct.App. 2004), trans. denied. A judgment is clearly erroneous only if the findings do not support the conclusions or the conclusions do not support the judgment. Bester, 839 N.E.2d at 147. Thus, if the evidence and inferences therefrom support the trial court's decision, we must affirm. In re L.S., 717 N.E.2d 204, 208 (Ind.Ct.App. 1999), trans. denied.
After considering the recommendations from IDCS and the Probation Department, along with other evidence, the court rejected the IDCS placement recommendations and instead followed the recommendation of the Probation Department to place D.S. in the Right of Passage program in Arizona. Its dispositional order included specific written findings and conclusions stating, among other things, that its placement decision was "consistent with the safety and the best interest of [D.S.]." (Appellant's App. at 22.) The court found "[r]emaining in the home community is contrary to the welfare of [D.S.]" and due to D.S.'s "history and his current offense, he is a significant risk to the safety of the community and himself, and therefore placement in a[n] unsecured facility in the community would not be appropriate." Id.
The dispositional order was consistent with Ind.Code § 31-37-18-9(b), which provides that if IDCS does not agree with a probation officer's recommendation, and the court does not follow the IDCS recommendation, the trial court shall accompany its dispositional decree with written findings that IDCS's recommendations are "unreasonable" based on the circumstances of the case or that they are "contrary to the welfare and best interests of the child." See id.
Because the court's placement is contrary to IDCS's recommendation and is an out-of-state placement, Ind.Code § 31-37-19-3 is also implicated in this case. A court may not place a delinquent child in a non-secure detention facility outside of Indiana unless the court makes written findings, based on clear and convincing evidence, the out-of-state placement is appropriate because there is no "comparable facility with adequate services located in Indiana. . . ." Ind.Code § 31-37-19-3(b)(2)(A).
In arriving at its decision to place D.S. at Rite of Passage, the court found:
* Due to the young age of the Juvenile and his potential for academic and *841 athletic success, a placement at a facility that concentrates on his strengths is more appropriate than a commitment to DOC at this time.
* There are no siblings in the home and mother is in favor of placement and is willing to travel out of state and travel expenses are included in the per diem.
* Breaking the Juvenile's negative ties with the community is essential to any substantial progress in an unsecured facility.
* That the per diem rate is comparable to an in-state placement.
The Court further finds this disposition is consistent with the safety and the best interest of the child and is the least restrictive and most appropriate setting available and least interferes with [the] family's autonomy, is least disruptive of family life, imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian[,] and provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.
* * * * * *
The Court now places the child, [D.S.], in: Rite of Passage's Canyon State Academy, Queens Creek[,] Arizona, a non-secure facility for the following reasons: [D.S.] has a history with this Court with handgun related charges, has a history of substance abuse issues, is currently expelled from school, and has a history of gang affiliation.
(Appellant's App. at 22.) There is evidence to support these findings, which in turn support the court's ultimate decision to place D.S. in the Rite of Passage program against IDCS's recommendation.
During the May 19, 2009 dispositional hearing, D.S.'s probation officer, Jason Dillmon, testified that D.S. has substance abuse issues as well as a significant history of gang involvement. Dillmon testified D.S.'s football coach and other school officials had told him D.S. had a "tremendous amount of [football] potential" and "great leadership skills" but D.S. had chosen to use these leadership skills in a negative way in the past. (Tr. at 13.) Dillmon felt the Rite of Passage program would allow D.S. to use his leadership skills "in a very positive way" and could lead to athletic scholarship opportunities. (Id. at 13-14.) Dillmon testified the Probation Department had been unable to find a comparable placement in Indiana and the alternative residential placement facilities IDCS recommended were either unwilling to admit D.S. or were inappropriate placements. Finally, Dillmon indicated placement in the Indiana facilities IDCS recommended would threaten the safety of the surrounding communities and would cause a "dramatic setback" for D.S. as it would not sever D.S.'s negative ties with his community. (Id. at 14.) Dillmon acknowledged that were D.S. to stay in Indiana, "really[,] the only option would be [the] Department of Correction[ ]." (Id. at 17.)
The Rite of Passage program was also recommended and approved of by Katherine Hurd-Holtzleiter, Chief Probation Officer in Madison County. Hurd-Holtzleiter testified that D.S. had never exhibited any psychiatric concerns, mood disorder, learning disability, or developmental delay, and that D.S.'s problem appeared to be a behavior problem. She expressed concern that several of IDCS's recommendations were secure facilities "geared toward sexual predators[,] which [D.S.] has no history of[,] or . . . serious psychiatric disabilities[,] which again[,] [D.S.] does not demonstrate need in that area." (Id. at 26.) Hurd-Holtzleiter also testified the three facilities willing to take D.S. were close to residential areas and/or major highways, giving D.S. "very easy access" *842 to these surrounding communities. All three provided for home visits that would allow D.S. back into his community in a "very non-structured environment where he is going to [be] subject to influences that he may not [have] developed internal controls over." (Id. at 26-27.)
Hurd-Holtzleiter's Addendum Report indicated the per diem charges for the Indiana residential facilities were: (1) Bashor's Children's Home: $224.00, (2) Crossroads: $232.93, and (3) Wernle Children's Home: $279.00. The per diem charge for the Rite of Passage program was $156.00, which included travel expenses for D.S.'s mother to visit on a quarterly basis.
D.S. testified he was willing to "work the program" at Rite of Passage and he wanted to be placed there. (Tr. at 32.) D.S.'s mother preferred placement at Rite of Passage. She stated she was willing to fully participate in the program and to travel to visit D.S.
The court concluded IDCS's placement recommendations were contrary to D.S.'s best interests. It placed D.S. in the Rite of Passage program and supported its order with specific factual findings based on ample evidence of D.S.'s history of drug abuse, gang affiliation, and expulsion from school, D.S.'s athletic and leadership abilities, his family relationships, his wishes and those of his mother, and the Probation Department's formal recommendation. The trial court's findings support its placement decision. We therefore cannot conclude that the trial court committed clear error in ordering that D.S. be placed in the Rite of Passage program.[2]
Affirmed.
BARNES, J., and HOFFMAN, Sr.J., concur.
NOTES
[1] Thomas J. Broderick, Jr., Prosecutor, and John J. McKay, Deputy Prosecutor, entered their appearance but did not file a Memorandum of Law.
[2] We pause to note a recent change to one of the statutes implicated in this case. When the court issued its modified dispositional order placing D.S. in the Rite of Passage program, Indiana law provided that IDCS was "not responsible for payment of any costs or expenses for housing or services provided to or for the benefit of a child placed by a juvenile court in a home or facility located outside Indiana, if the placement does not comply with the conditions stated in IC XX-XX-XX-X(b) or IC XX-XX-XX-X(b)." Ind.Code § 31-40-1-2(f). During the 2009 Special Session of the Indiana General Assembly, Indiana Code § 31-40-1-2(1) was amended as follows: "The [IDCS] is not responsible for payment of any costs or expenses for housing or services provided to or for the benefit of a child placed by a juvenile court in a home or facility located outside Indiana, if the placement is not recommended or approved by the director of the department or the director's designee." (Emphasis added). However, because the change to Ind.Code § 31-40-2-1(f) did not become effective until July 1, 2009, it is inapplicable to the present case.